**Thomas Lether, OSB #101708**
tlether@letherlaw.com
**Eric J. Neal, OSB #110268**
eneal@letherlaw.com
LETHER & ASSOCIATES, PLLC
1848 Westlake Ave. N., Ste. 100
Seattle, WA  98109
T: 206-467-5444
F: 206-467-5544
*Attorneys for First Mercury*
*Insurance Company*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY, a foreign insurance company,<br><br>              Plaintiff,<br><br>      v.<br><br>ENSIGN SERVICES, INC., a Nevada corporation; CONNECTED HEALTHCARE, INC. d/b/a CONNECTED HOME HEALTH, a Nevada corporation; BRIDGETTE SHATTUCK, an individual; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance company; PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign insurance company; and WALLY KONSA, an individual,<br><br>              Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF (28 U.S.C. § 2201)** |

Plaintiff First Mercury Insurance Company (hereinafter "First Mercury) submits the

following Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57.

# I.    PARTIES

1.1    Plaintiff First Mercury is an excess and surplus lines foreign insurance company organized under the laws of the State of Delaware with a statutory home office in Delaware and a place of business located in the State of Michigan. First Mercury transacts business in Oregon and at all material times has transacted business in Oregon.

1.2    Defendant Ensign Services, Inc. (hereinafter "Ensign") is a Nevada corporation, with a home office in California, and has its principal place of business in the State of California.

1.3    Defendant Connected Healthcare, Inc. d/b/a Connected Home Health (hereinafter "Connected Healthcare") is a Nevada corporation, with a home office in California, and has its principal place of business in the State of California. Upon information and belief, at all relevant times Connected Healthcare transacted business in the State of Oregon and in Clackamas County.

1.4    Defendant Bridgette Shattuck is an individual who, upon information and belief, is a citizen of the State of Oregon and resides in Multnomah County.

1.5    Defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") is a foreign insurance company licensed to conduct business in the State of Oregon. State Farm is organized under the laws of the State of Illinois with its home office and principal place of business in the State of Illinois. At all material times, State Farm transacted business in Oregon.

1.6    Defendant Philadelphia Indemnity Insurance Company (hereinafter "Philadelphia Indemnity") is a foreign insurance company licensed to conduct business in the State of Oregon. Philadelphia Indemnity is organized under the laws of the State of

Pennsylvania with its home office and principal place of business in the State of Pennsylvania. Philadelphia Indemnity is licensed to transact business in Oregon and at all material times transacted business in Oregon.

1.7    Defendant Wally Konsa is an individual who, upon information and belief, is a citizen of the State of Oregon and resides in Clackamas County.

## II.    JURISDICTION AND VENUE

2.1    Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332, *et. seq*., as complete diversity exists among the parties and the amount in controversy exceeds $75,000.

2.2    The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the parties with respect to the existence of insurance coverage under the insurance policy issued by First Mercury. A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time because First Mercury has no adequate remedy at law which will resolve the current controversy.

2.3    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions which gave rise to this claim occurred in this District, and because the Defendants are subject to this Court's personal jurisdiction.

## III.    FACTUAL BACKGROUND

**A.    The Underlying Lawsuit.**

3.1    This lawsuit is an insurance coverage dispute arising out of allegations made in an underlying action entitled *Wally Konsa v. Connected Healthcare, Inc. and Bridgette Shattuck*, Multnomah County Circuit Court Case No. 16-CV-28737 (the "Underlying Lawsuit").

3.2    On September 2, 2016, Wally Konsa commenced the Underlying Lawsuit

against Bridgette Shattuck and Connected Healthcare by filing a Complaint. On or about February 26, 2018, Mr. Konsa filed a First Amended Complaint in the Underlying Lawsuit.

3.3     As alleged in the First Amended Complaint, the subject loss arises out of an automobile accident which occurred on or about September 5, 2014 (the "Subject Accident").

3.4     The First Amended Complaint alleges that Ms. Shattuck was an agent and/or employee of Connected Healthcare, and held the position of a visiting nurse. Connected Healthcare allegedly paid Ms. Shattuck wages, mileage/car allowance, and required that she be on call with a company cell phone.

3.5     Upon information and belief, Connected Healthcare is affiliated with Ensign.

3.6     The First Amended Complaint alleges that on September 5, 2014, Ms. Shattuck was visiting Mr. Konsa's relative and providing visiting nurse services within the course and scope of her employment and/or agency relationship. The First Amended Complaint further alleges that at all relevant times Ms. Shattuck was operating or had operated her vehicle, which led to the Subject Accident.

3.7     Specifically, the First Amended Complaint alleges that at the conclusion of the nursing visit, Ms. Shattuck got in her vehicle in order to proceed to her next appointment. Ms. Shattuck then allegedly got out of her vehicle, engaged in a conversation with Mr. Konsa, and they walked to the end of the driveway. Ms. Shattuck's vehicle then allegedly started rolling down the driveway towards Ms. Shattuck and Mr. Konsa.

3.8     Ms. Shattuck allegedly yelled for Mr. Konsa to jump into the vehicle to stop it.

3.9     Mr. Konsa was apparently attempting to get into Ms. Shattuck's vehicle when it allegedly rolled over him and caused injury.

3.10     Among the injuries alleged, Mr. Konsa allegedly suffered physical injury to his

left knee, hips, abdomen, and other parts of his body, and experienced pain and suffering as well as economic and non-economic damages.

3.11    Based on these allegations, Mr. Konsa asserted a cause of action for negligence against Ms. Shattuck and Connected Healthcare. In part, Mr. Konsa alleges that Ms. Shattuck and Connected Healthcare negligently failed to ensure the vehicle was in the park position, failed to maintain control of the vehicle, operated the vehicle in a careless manner, failed to make reasonable and proper observations while parking (or failing to act on any observations), failed to turn the front wheels to the side, and failed to effectively set the brake on the vehicle.

3.12    Mr. Konsa's original Complaint alleged damages in the amount of $1,207,985.89. However, in his First Amended Complaint, Mr. Konsa alleged damages in the amount of $1,937,458.19.

3.13    On February 26, 2018, trial commenced in the Underlying Lawsuit. The trial resulted in a verdict favorable to Mr. Konsa.

3.14    On or about February 28, 2018, a General Judgment and Money Award was entered in the Underlying Lawsuit in the amount of $1,780,082.19.  The amounts comprising this Judgment were identified as follows:

    (1) $85,201.19 was identified as "Economic Damages for Past Medical Expenses";

    (2) $271,852.00 was identified as "Economic Damages for Past Lost Wages";

    (3) $423,029.00 was identified as "Economic Damages for Future Lost Wages";

    (4) $1,000,000.00 was identified as "Noneconomic Damages".

3.15    On March 14, 2018, the underlying Defendant filed a Motion to Reduce Plaintiff's Non-Economic Damages Award to $500,000.00 pursuant to Oregon law.

**B.**     **Insurance Claim Tender and Related Correspondence.**

3.16     Upon information and belief, Philadelphia Indemnity issued an insurance policy, which includes liability coverage, to Ensign. Upon information and belief, Philadelphia agreed to defend Connected Healthcare in the Underlying Lawsuit. First Mercury does not have any additional information regarding Philadelphia Indemnity's coverage position in relation to the claims at issue in the Underlying Lawsuit.

3.17     Upon information and belief, State Farm issued an auto insurance policy, which includes liability coverage, to Ms. Shattuck. First Mercury is unaware as to State Farm's coverage position, if any, in relation to the claims at issue in the Underlying Lawsuit.

3.18     The first time First Mercury was provided notice of the Underlying Lawsuit was on March 5, 2018. Specifically, on March 5, 2018, First Mercury received a tender of the claim from Ensign's insurance broker, Lockton Companies, LLC (hereinafter "Lockton").

3.19     Upon information and belief, only minimal efforts at settlement were engaged in prior to Judgment being reached in the Underlying Lawsuit, and only nominal amounts were offered to Mr. Konsa.

3.20     Upon information and belief, State Farm was Ms. Shattuck's automobile liability carrier and the State Farm policy has liability limits in the amount of $100,000. Upon information and belief, at no point was there a demand made for State Farm to pay its policy limits.

3.21     Upon information and belief, no payment on the Judgment has been issued to Mr. Konsa at this time.

## IV.    THE POLICIES OF INSURANCE

**A.    Identification of the Subject Insurance Policies**

4.1    First Mercury issued a Commercial Excess Liability Policy to Ensign, under policy number CA-EX-0000019847-02, which was in effect from November 1, 2013, to November 1, 2014 (hereinafter the "First Mercury Excess Policy"). The First Mercury Excess Policy contains a $5,000,000 each occurrence limit and a $5,000,000 general aggregate limit.

4.2    Philadelphia Indemnity issued an insurance policy to Ensign, under policy number PHPK941634, which was in effect from November 1, 2013 to November 1, 2014 (hereinafter the "Philadelphia Policy"). In part, the Philadelphia Policy provides third-party liability coverage under a Business Auto Coverage form CA 00 01 03 06.[1] The Philadelphia Policy contains a $1,000,000.00 liability limit.

4.3    Upon information and belief, State Farm issued an auto insurance policy, which included liability coverage, to Ms. Shattuck and which was in effect at the time of the Subject Accident (hereinafter the "State Farm Policy"). Upon information and belief, the State Farm Policy contains a liability limit in an amount not less than $100,000.00.

**B.    Provisions of the First Mercury Excess Policy**

4.4    The First Mercury Excess Policy contains the following language regarding the insured's duties of cooperation:

> **SECTION III – CONDITIONS**
>
> The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this Policy unless superseded by the following conditions.
> …

---

[1] The Philadelphia Policy also contains Business Auto Coverage form CA 00 01 03 10. With respect to the coverage issues implicated in the current matter, the two coverage forms are substantially similar. Unless otherwise stated, all applicable policy provisions are cited from coverage form CA 00 01 03 06.

**5. Duties In The Event Of a Claim, Event or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an "event," regardless of the amount, which may result in a claim under this Policy. To the extent possible, notice should include:

**(1)** How, when and where the "event" took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and lo cation of any "injury or damage" arising out of the "event"

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and
**(2)** notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other insured involved must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
**(2)** authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

FMIC-EX-0001(07/2012).

4.5    The First Mercury Excess Policy contains the following definition that is applicable to the foregoing.

**5. "Event"** means an "occurrence," offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

FMIC-EX-0001(07/2012).

4.6    The First Mercury Excess Policy contains the following insuring agreement:

### FIRST MERCURY LEAD EXCESS LIABILITY
### COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we," "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance." Other words and phrases that appear in quotation marks in this Policy have special meaning. Refer to Section IV - Definitions. Other words and phrases that are not defined under this Policy but defined in the "controlling underlying insurance" will have the meaning described in the Policy of "controlling underlying insurance."

The insurance provided under this Policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However, the coverage provided under this Policy will not be broader than that provided by the applicable "controlling underlying insurance."

There may be more than one "controlling underlying insurance" Policy listed in the Declarations and there may be terms and provisions in those respective policies which are in conflict, and which are not superseded by the provisions of this Policy. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" Policy applicable to the particular "event" for which a claim is made or "suit" is brought will apply.

### SECTION 1- COVERAGES

### 1. Insuring Agreement

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Policy applies.

We will have the right and duty to defend the insured against any "suit" seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages for "injury or damage."

However, we will have no duty to defend the insured against any "suit" seeking damages for which insurance under this Policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant clam or "suit," for which we have the duty to defend.

But:

> **(1)** The amount we will pay for "ultimate net loss" is limited as described in Section II- Limits Of Insurance; and
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Policy. However, if the Policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Policy.

**b.** This insurance applies to "injury or damage" that is subject to an applicable "retained limit." If any other limit, such as a sublimit, is specified in the "controlling underlying insurance," this insurance does not apply to 'bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance."

**c.** If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occurs during its Policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the Policy period of this Policy. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its Policy

period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the Policy period of this Policy.

**d.** Any additional insured under any Policy of "controlling underlying insurance" will automatically be an additional insured under this Policy. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance." Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance."
…

FMIC-EX-0001(07/2012)

4.7      The First Mercury Excess Policy contains the following definitions that are applicable to the foregoing insuring agreement.

**3. "Controlling underlying insurance"** means any Policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance."

**4. "Controlling underlying insurer"** means any insurer who provides any Policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance."
. . .

**9. "Injury or damage"** means any "injury or damage" covered in the applicable "controlling underlying insurance" arising from an "event"
. . .

**15. "Retained limit"** means the available limits of "controlling underlying insurance" and self insured amounts applicable to the claim.
. . .

**19. "Suit"** means a civil proceeding in which damages because of "injury or damage" to which this insurance applies are alleged. "Suit" includes:

An arbitration proceeding in which such damages are claimed and b which the insured musts submit or does submit with our consent, or

Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**20. "Ultimate net loss"** means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.** Settlements, judgments, binding arbitration; or
**b.** Other binding alternate dispute resolution proceeding entered into with our consent.

**"Ultimate net loss"** includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

FMIC-EX-0001(07/2012).

4.8     The First Mercury Excess Policy contains the following exclusions:

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Policy. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Policy.

**Insurance provided under this Policy does not apply to:**

**a.  Auto**

Any loss, cost or expense payable under or resulting from any of the following auto coverages:

**(1)** First-party physical damage coverage;
**(2)** No-fault coverage;
**(3)** Personal injury protection or auto medical payments coverage; or
**(4)** Uninsured or underinsured motorist's coverage.
…

**l.  Professional Services**

Any "injury or damage" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or

contributed to by the rendering or failure to render any professional service. This includes but is not limited to:

…

**(6)** Any service, treatment, advice or instruction relating to physical fitness , including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;

**(7)** Medical, surgical, dental , x-ray or nursing services, treatment, advice or instruction whether employed or contracted ; including but not limited to physicians , surgeons , osteopaths, podiatrists , dentists, orthodontists , chiropractors, psychiatrists , psychologists, nurses, therapists or other health care services;

**(8)** Hospitals, nursing homes, extended care facilities, blood banks, laboratories or other health care providers;

**(9)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

…

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "injury or damage" involved the rendering of or failure to render any professional service.

### m. Punitive or Exemplary Damages

Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are a multiple of, or in addition to, compensatory damages, including related interest or costs, whether or not such damages, related interest, or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the Policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

…

**o. Renewed Or Replacement "Controlling Underlying Insurance"**

Any claim for damages covered under a renewed or replacement Policy of "controlling underlying insurance" that would not have been covered by the "controlling underlying insurance" that was in force at the inception of this Policy, unless coverage therefor has been provided by endorsement to this Policy.

**p. Sublimits In "Controlling Underlying Insurance"**

Any claim for damages that is covered under a sublimit of any "controlling underlying insurance" or would have been covered but for the exhaustion of the sublimit of liability of the "controlling underlying insurance."

…

FMIC-EX-0001 (07/2012)

4.9     The Policy also contains the following language regarding other insurance:

**12. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Pol icy. When this insurance is excess, if no other insurer defends, we may undertake to do so , but we will be entitled to the insured's rights against all those other insurers . When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Policy; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

FMIC-EX-0001(07/2012).

**C.     <u>Provisions of the The Philadelphia Policy.</u>**

4.10     The Philadelphia Policy contains the following insuring agreement:

### SECTION II – LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . .

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

. . .

4.11    The Philadelphia Policy also contains the following provision regarding when the policy provides coverage:

### 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and
**b.** Within the coverage territory.

. . .

CA 00 01 03 06.

4.12    The Philadelphia Policy contains the following definitions that are applicable to the foregoing insuring agreement.

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these. . . .

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought. . . .

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or
**2.** A "covered pollution cost or expense", to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

CA 00 01 03 06.

4.13    The Philadelphia Policy also contains the following provision regarding Who Is An Insured:

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c.  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

CA 00 01 03 06.

4.14    The Philadelphia Policy also contains an endorsement entitled "Liability Coverage Extensions", which identifies the following as "insureds" under the policy:

The following are also "insureds":

1. **Board Members –** Board members (or their spouses) while renting a vehicle while on business for the named insured.

2. **Newly Acquired Entities –** Any business entity newly acquired or formed by you during the policy period, provided you own 50% or more of the business entity and the business entity is not separately insured for Business Auto Coverage. Coverage is extended up to a maximum of 180 days following the acquisition or the formation of the business entity.

3. **Designated Insured** – Any person or organization designated by the "insured" is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured"

under the Who Is An Insured Provision contained in **SECTION II** of the Coverage Form.

**4. Lessor of Leased Autos** – The lessor of a "leased auto" is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

    **a.** You;

    **b.** Any of your "employees" or agents; or

    **c.** Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

Any "leased auto" in the policy schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

The coverages provided under this endorsement apply to any "leased auto" in the policy schedule until the expiration date of the lease, or when the lessor or his or her agent takes possession of the "leased auto," whichever occurs first.

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

PI-CA-001 (05/10).

    4.15    The Philadelphia Policy also contains an endorsement for Professional Services

Not Covered, which provides as follows:

This insurance does not apply to:

    **1.** "Bodily injury" resulting from providing or the failure to provide any medical or other professional services.

    …

CA 2018 12 93.

    4.16    The Philadelphia Policy also contains the following language regarding other

insurance:

**5. Other Insurance**

    **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't

own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.
**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is  deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.**    Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

CA 00 01 03 06.

4.17    The Philadelphia Policy contains the following language regarding the insured's

duties of cooperation:

### SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:
…

### 2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident," claim, "suit" or "loss," you must give us, or our authorized representative, prompt notice of the "accident" or "loss." Include:

**(1)** How, when and where the "accident" or "loss" occurred;
**(2)** The "insured's" name and address; and
**(3)** To the extent possible, the names and addresses of any injured
persons and witnesses.

Your duty to give us or our authorized representative prompt notice of the "accident" or "loss" applies only when the "accident" or "loss" is known to:

**(1)** You, if you are an individual;
**(2)** A partner, if you are a partnership; or
**(3)** An executive officer or insurance manager, if you are a corporation.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
**(4)** Authorize us to obtain medical records or other pertinent information.
**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.
**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.
**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.
**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

CA 00 01 03 06, as amended by PI-CA-001 (05/10).

**D.**     **Provisions of the State Farm Policy.**

4.18    First Mercury has not been provided a copy of the State Farm Policy. Upon information and belief, the State Farm Policy provides third-party liability coverage for the claims at issue, and was in effect at the time of the Subject Accident.

4.19    In accordance with applicable law, First Mercury now brings a claim for Declaratory Judgment seeking a judicial determination that it does not owe any coverage obligation for the claims asserted in the Underlying Lawsuit.

## V.     NO INDEMNITY OR DEFENSE COVERAGE UNDER THE POLICY

5.1    First Mercury reasserts paragraphs 1.1 through 4.19 and incorporates the same as though fully stated herein.

5.2    Pursuant to the First Mercury Excess Policy, Ms. Shattuck and/or Connected Healthcare is required to notify First Mercury as soon as practicable of an "event" or when a claim is made or a "suit" is filed against Ms. Shattuck and/or Connected Healthcare.

5.3    There is an actual and justiciable controversy as to whether Ms. Shattuck and/or Connected Healthcare complied with their duty to notify First Mercury as soon as practicable of the subject claim given that the Underlying Lawsuit was filed against Ms. Shattuck and Connected Healthcare on or about September 2, 2016, and tender was not made to First Mercury until March 5, 2018.

5.4    There is an actual and justiciable controversy as to whether any failure to comply with their duty to notify on the part of Ms. Shattuck and/or Connected Healthcare prejudiced First Mercury.

5.5    Pursuant to the First Mercury Excess Policy, Ms. Shattuck and/or Connected Healthcare is required to comply with certain terms and conditions as a condition precedent to

coverage.

5.6     There is an actual and justiciable controversy as to whether Ms. Shattuck and/or Connected Healthcare complied with the cooperation provisions in the First Mercury Excess Policy, and whether any failure to comply on the part of Ms. Shattuck and/or Connected Healthcare prejudiced First Mercury.

5.7     Pursuant to the First Mercury Excess Policy, the policy is only to apply in excess over any other insurance, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis.

5.8     To the extent that the First Mercury Excess Policy provides coverage, there is an actual and justiciable controversy as to whether the coverage is excess over the State Farm Policy and the Philadelphia Policy.

5.9     Pursuant to the First Mercury Excess Policy, the policy will pay the "ultimate net loss" that is in excess of the "retained limit," which is the available limits of any "controlling underlying insurance." The First Mercury Excess Policy identifies the Philadelphia Policy as controlling underlying insurance, and it carries a $1,000,000 liability limit. Upon information and belief, the State Farm Policy also provides primary insurance and has a reported limit of $100,000.00.

5.10     There is an actual and justiciable controversy as to whether the First Mercury Excess Policy provides coverage, if at all, to damages in excess of the "retained limit" of $1,100,000, which is the combined liability limits of the State Farm Policy and the Philadelphia Policy.

5.11     Pursuant to the First Mercury Excess Policy, the policy includes as an insured any person or organization qualifying as such under the "controlling underlying insurance."

First Mercury's Excess Policy names Ensign as an insured on its declarations page.  The Philadelphia Policy names Ensign and "Ensign Facility Services, Inc." as insureds on its declarations page, and also contains a Named Insured Schedule which lists several other entities as named insureds.  Connected Health is not identified as a named insured in either the First Mercury Excess Policy or the Philadelphia Policy.  Upon information and belief, Connected Health also is not identified as a named insured in the State Farm Policy.

5.12    There is an actual and justiciable controversy as to whether Connected Healthcare is an insured under the First Mercury Excess Policy.

5.13    There is an actual and justiciable controversy as to whether Connected Healthcare is an insured under the Philadelphia Policy.

5.14    There is an actual and justiciable controversy as to whether Connected Healthcare is an insured under the State Farm Policy.

5.15    Pursuant to the First Mercury Excess Policy, First Mercury only has the duty to defend the insured against claims to which the insurance applies once the applicable limits of the "controlling underlying insurance" have been exhausted.

5.16    There is an actual and justiciable controversy as to whether the applicable limits of the State Farm Policy and/or the Philadelphia Policy have been exhausted.

5.17    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Auto Exclusion which bars coverage, in part, for any loss payable under or resulting from no fault auto coverage.

5.18    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare are for a loss that is payable under or resulting from no fault auto coverage, and are therefore barred by the Auto Exclusion in the First Mercury

Excess Policy.

5.19    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Professional Services Exclusion (subpart 6), which bars coverage for "injury or damage" arising out of the rendering or failure to render any professional service, including any service treatment or advice relating to physical fitness, diet, or physical training programs.

5.20    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare arise out of the rendering or failure to render any professional service relating to physical fitness, diet, or physical training programs, and are therefore barred by the Professional Services Exclusion (subpart 6) in the First Mercury Excess Policy.

5.21    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Professional Services Exclusion (subpart 7), which bars coverage for "injury or damage" arising out of the rendering or failure to render any professional service, including any service treatment or advice relating to medical or nursing services or other health care services.

5.22    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare arise out of the rendering or failure to render any professional service relating to medical or nursing services or other health care services, and are therefore barred by the Professional Services Exclusion (subpart 7) in the First Mercury Excess Policy.

5.23    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Professional Services Exclusion (subpart 8), which bars coverage for "injury or damage" arising out of the rendering or failure to render any professional service, including any service relating to health care providers.

5.24    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare arise out of the rendering or failure to render any professional service relating to health care providers, and are therefore barred by the Professional Services Exclusion (subpart 8) in the First Mercury Excess Policy.

5.25    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Professional Services Exclusion (subpart 9), which bars coverage for "injury or damage" arising out of the rendering or failure to render any professional service, including any service, treatment or advice related to personal grooming.

5.26    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare arise out of the rendering or failure to render any professional service related to personal grooming, and are therefore barred by the Professional Services Exclusion (subpart 9) in the First Mercury Excess Policy.

5.27    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Punitive or Exemplary Damages Exclusion which bars coverage for any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are in addition to compensatory damages.

5.28    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare relate to punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are in addition to compensatory damages, and are therefore barred by the Punitive or Exemplary Damages Exclusion in the First Mercury Excess Policy.

5.29    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Renewed Or Replacement "Controlling Underlying Insurance" Exclusion, which bars coverage

for any claim for damages that would not have been covered by the "controlling underlying insurance" that was in force at the inception of the First Mercury Excess Policy.

5.30    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare relate to any claim for damages that would not have been covered by the version of the State Farm Policy and/or Philadelphia Policy that was in force at the inception of the First Mercury Excess Policy.

5.31    Pursuant to the First Mercury Excess Policy, coverage is excluded by the Sublimits In "Controlling Underlying Insurance" Exclusion, which bars coverage for any claim for damages that is covered under a sublimit of any "controlling underlying insurance" or would have been covered but for the exhaustion of the sublimit of liability of the "controlling underlying insurance."

5.32    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare relate to any claim for damages that is covered under a sublimit of any "controlling underlying insurance" or would have been covered but for the exhaustion of the sublimit of liability of the "controlling underlying insurance", and are therefore barred by the Sublimits In "Controlling Underlying Insurance" Exclusion in the First Mercury Excess Policy.

5.33    Pursuant to the First Mercury Excess Policy, the insurance provided under the policy follows the form and the same provisions, exclusions, and limitations that are contained in the applicable "controlling underlying insurance".

5.34    There is an actual and justiciable controversy as to whether the First Mercury Excess Policy follows the form of the Philadelphia Policy, and follows the same provisions, exclusions, and limitations contained in the Philadelphia Policy.

5.35    There is an actual and justiciable controversy as to whether the First Mercury Excess Policy follows the form of the State Farm Policy, and follows the same provisions, exclusions, and limitations contained in the State Farm Policy.

5.36    Pursuant to the Philadelphia Policy, any amount incurred in the defense of an insured does not reduce the limits of the Philadelphia Policy.

5.37    There is an actual and justiciable controversy as to whether the policy limits under the Philadelphia Policy could have been exhausted through the defense of Connected Health.

5.38    Pursuant to the Philadelphia Policy, the policy applies to damages caused by an "accident" resulting from the ownership or use of an insured auto.

5.39    There is an actual and justiciable controversy as to whether the vehicle at issue in the Subject Accident was an insured auto under the Philadelphia Policy.

5.40    Pursuant to the Philadelphia Policy, the policy provides coverage for any "covered auto".

5.41    There is an actual and justiciable controversy as to whether the vehicle at issue is a covered auto under the Philadelphia Policy.

5.42    Pursuant to the Philadelphia Policy, the policy provides coverage for anyone while using a "covered auto" with an insured's permission, except for an insured's employee if the covered auto is owned by that employee or a member of their household.

5.43    There is an actual and justiciable controversy as to whether Ms. Shattuck is an employee of Connected Healthcare and whether the vehicle involved in the Subject Accident was owned by Ms. Shattuck or a member of her household.

5.44    Pursuant to the Philadelphia Policy, coverage is excluded by the Professional

Services Not Covered Exclusion, which bars coverage for "bodily injury" which results from providing or the failure to provide any medical or other professional services.

5.45    There is an actual and justiciable controversy as to whether the claims against Ms. Shattuck and/or Connected Healthcare result from providing or the failure to provide any medical or other professional services, and are therefore barred by the Professional Services Not Covered Exclusion in the Philadelphia Policy.

5.46    Pursuant to the Philadelphia Policy, this policy provides primary insurance with respect to any covered "auto" owned by an insured.

5.47    There is an actual and justiciable controversy as to whether the subject claim involves a covered auto owned by an insured, and whether the Philadelphia Policy operates on a primary basis.

5.48    Pursuant to the Philadelphia Policy, Ms. Shattuck and/or Connected Healthcare is required to comply with certain terms and conditions as a condition precedent to coverage.

5.49    There is an actual and justiciable controversy as to whether Ms. Shattuck and/or Connected Healthcare complied with the cooperation provisions in the Philadelphia Policy, and whether any failure to comply on the part of Ms. Shattuck and/or Connected Healthcare prejudiced any insurer.

5.50    Pursuant to the Philadelphia Policy, Ms. Shattuck and/or Connected Healthcare is required to promptly notify Philadelphia Indemnity of an "accident" or send notice of any "suit" filed against Ms. Shattuck and/or Connected Healthcare.

5.51    There is an actual and justiciable controversy as to whether Ms. Shattuck and/or Connected Healthcare complied with their duty to promptly notify Philadelphia Indemnity of the subject claim, and whether this caused prejudice to any insurer.

5.52    Upon information and belief, the State Farm Policy provides third-party liability coverage pursuant to its terms and conditions.

5.53    There is an actual and justiciable controversy as to whether the State Farm Policy provides third-party liability coverage with respect to the claims at issue.

5.54    First Mercury reserves the right to assert any other exclusions or grounds for which coverage for the claims against Ms. Shattuck and/or Connected Healthcare may be excluded under the Policy.

### VI.    FIRST CAUSE OF ACTION – DECLARATORY RELIEF
### (Against All Defendants)

6.1    First Mercury reasserts paragraphs 1.1 through 5.54 and incorporates the same as though fully set forth herein.

6.2    Actual and justiciable controversies exist as to whether any defense coverage is available under the First Mercury Excess Policy as set forth above.

6.3    Pursuant to and in accordance with 28 U.S.C. § 2201, First Mercury requests that the Court grant declaratory relief in favor of First Mercury and enter a judicial determination that First Mercury does not have an obligation to contribute to the defense of Ms. Shattuck and/or Connected Healthcare in regard to the claims related to the Underlying Lawsuit.

6.4    Actual and justiciable controversies exist as to whether any indemnity coverage is available under the First Mercury Excess Policy in regard to the claims related to the Underlying Lawsuit.

6.5    Pursuant to and in accordance with 28 U.S.C. § 2201, First Mercury requests that the Court grant declaratory relief in favor of First Mercury and enter a judicial determination that First Mercury does not have an obligation to provide any indemnity

coverage in regard to the claims arising from the Underlying Lawsuit.

6.6     To the extent that First Mercury has an obligation to contribute to the defense of Ms. Shattuck and/or Connected Healthcare under the First Mercury Excess Policy, there is an actual and justiciable controversy as to whether such coverage only applies after the exhaustion of the combined policy limits of the State Farm Policy and the Philadelphia Policy.

6.7     To the extent that the Court determines there is coverage available to Ms. Shattuck and/or Connected Healthcare under the First Mercury Excess Policy, pursuant to 28 U.S.C. § 2201, First Mercury requests that the Court grant declaratory relief in favor of First Mercury and enter a judicial determination that such coverage is excess over any other coverage provided to Ms. Shattuck and/or Connected Healthcare under any other policy of insurance.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, First Mercury Insurance Company, having specifically alleged the foregoing, now prays for the following relief:

1.     For a declaration of the rights and obligations of the parties under the First Mercury Excess Policy.

2.     For a declaration that First Mercury does not have a duty to defend Ms. Shattuck and/or Connected Healthcare under the First Mercury Excess Policy.

3.     For a declaration that First Mercury does not have a duty to indemnify Ms. Shattuck and/or Connected Healthcare under the First Mercury Excess Policy.

4.     For a declaration that Mr. Konsa is bound by any judicial declarations in this matter involving the First Mercury Excess Policy.

5.     For all pre-judgment and post-judgment interest as allowed by applicable law.

6.      For attorney fees and costs allowed by applicable statute and law.

7.      For other and further relief as the Court deems just and equitable.


DATED this 23rd day of April, 2018.

                                LETHER & ASSOCIATES, PLLC

                                *s/ Thomas Lether*
                                *s/ Eric Neal*
                                **Thomas Lether, OSB #101708**
                                tlether@letherlaw.com
                                **Eric J. Neal, OSB #110268**
                                eneal@letherlaw.com
                                LETHER & ASSOCIATES, PLLC
                                1848 Westlake Ave. N., Ste. 100
                                Seattle, WA  98109
                                T: 206-467-5444
                                F: 206-467-5544
                                *Attorney for First Mercury Insurance Company*